UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN HANEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED AIRLINES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00474-VC<br><br>**ORDER DENYING MOTION TO DISMISS THE SEVENTH AMENDED COMPLAINT**<br><br>Re: Dkt. No. 77 |

　　　　Ken Haney, an African-American pilot employed by United Airlines, contends the defendants (collectively, "United") have discriminated against him and conspired to discriminate against him by intentionally withholding promotional opportunities from him because of his race, in violation of Title VII of the Civil Rights Act, the California Fair Employment and Housing Act ("FEHA"), 42 U.S.C. § 1981, and 42 U.S.C. § 1985.  Haney also alleges United retaliated against him for filing this lawsuit, in violation of Title VII, FEHA, and section 1981.  United has moved to dismiss the Seventh Amended Complaint ("7AC").  The motion to dismiss is denied in its entirety.

## I.

### A.

　　　　"Under Title VII, an individual suffers disparate treatment 'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)); *see also* 42 U.S.C. § 2000e-2(a)(1).  "Failure to promote is a common manifestation of disparate treatment." *McGinest*, 360 F.3d at 1121.

United argues that the 7AC fails to state a claim for disparate treatment of Haney with respect to promotional opportunities because it does not plead a prima facie case of discrimination under the framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  But because a Title VII plaintiff may ultimately prove disparate treatment either "by using the *McDonnell Douglas* framework, or alternatively, [by] simply produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]," *McGinest*, 360 F.3d at 1122, a Title VII plaintiff "need not plead a prima facie case to survive a motion to dismiss." *Borja-Valdes v. City of S.F.*, No. 3:14-CV-04168-CRB, 2015 WL 5522287, at *4 (N.D. Cal. Sept. 18, 2015) (citing *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014)).  The plaintiff need only "plead facts sufficient to show that [his] claim has substantive plausibility." *Johnson*, 135 S. Ct. at 347 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Taken as true, the allegations in the 7AC are sufficient to show Haney's claim of disparate treatment has substantive plausibility.  The 7AC contains plausible allegations that, if proven, would constitute direct evidence of United decision makers' discriminatory intent in denying "special assignments" to Haney.  According to Haney, special assignments are quasi-promotional opportunities that lead to greater pay and are prerequisites for additional professional advancement at United.  He alleges that, at the relevant time, special assignments were not advertised but instead selectively doled out by United's Chief Pilots, who are responsible for making promotional decisions at the company.  The 7AC asserts on information and belief that, after United was required to hire African-American pilots under an EEOC consent decree originally entered in the 1970s and enforced through additional litigation in the 1980s and 1990s, several white Chief Pilots – who resented the hiring of African Americans under the consent decree – formed a secret, racist organization called "The Vault" with the express purpose to prevent African-American pilots from achieving professional advancement at United.  Haney alleges he overheard several Chief Pilots and members of The Vault disparagingly referring to African-American pilots as "consent decree hires" and "equal

opportunity hires."  He also alleges he heard them use racial slurs and other derogatory language to refer to African-American pilots.  The 7AC alleges that members of The Vault openly stated that African Americans hired under the consent decree, like Haney, would not be promoted.  And the 7AC states that Haney repeatedly asked several Chief Pilots (whom he identifies by name) for promotional opportunities generally and for special assignments specifically, but was never given a special assignment, while white pilots who were less qualified and less senior did receive special assignments.  If United Chief Pilots associated with The Vault intentionally refused to give special assignments to Haney, after he requested them, because Haney was African American, those actions would constitute disparate treatment in violation of Title VII.  *See McGinest*, 360 F.3d at 1121-22.

Even disregarding the allegations about The Vault, Haney has alleged sufficient facts in the 7AC to make out a prima facie case for disparate treatment under *McDonnell Douglas*, though he need not have done so to survive a motion to dismiss.  *Borja-Valdes*, 2015 WL 5522287 at *3-4.  Under the *McDonnell Douglas* framework, a plaintiff can establish a prima facie case for failure to promote in violation of Title VII by showing that: "(1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available [promotion], (3) he was rejected despite his qualifications, and (4) after the rejection, the [promotion] remained available and the employer continued to review applicants possessing comparable qualifications."  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The application requirement is relaxed when the promotion at issue is not advertised.  *Id.* at 1114.  In such cases, "the employee must demonstrate that the employer was aware of [his] availability for the position."  *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1463 (9th Cir. 1985), *overruled on other grounds by Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).  A general expression of interest in promotions to a particular class of positions is sufficient to put the employer on notice of the employee's availability.  *See Foster*, 772 F.2d at 1463; *see also, e.g.*, *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004) ("[I]f an employee expresses to the employer an interest

in promotion to a particular class of positions, that general expression of interest may satisfy the requirement that the employee apply for the position."); *Mauro v. S. New England Telecommunications, Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) ("Although . . . a plaintiff alleging failure to promote ordinarily must show that he or she applied for the specific job or jobs at issue, that requirement does not apply where, as here, the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them.").

As previously mentioned, Haney has alleged that he told several Chief Pilots of his interest in promotional opportunities generally, and in receiving special assignments particularly. According to the 7AC, in 2012 Haney informed Chief Pilot Rick Muir (an alleged Vault associate) that he was interested in promotional opportunities and wanted to receive special assignments, that Muir acknowledged Haney's interest, but that Muir thereafter failed to select Haney for any promotions or special assignments and instead gave those unadvertised opportunities to white pilots who were less qualified and less senior. These plausible allegations alone make out a prima facie case for disparate treatment under *McDonnell Douglas*. *See, e.g.*, *Lyons*, 307 F.3d at 1112.

The motion to dismiss Haney's Title VII disparate treatment claim is therefore denied.

### B.

FEHA makes it an unlawful employment practice "to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of that person's race. Cal. Gov't Code § 12940(a). Because Haney has stated a claim for disparate treatment under Title VII, he has necessarily also stated a claim for disparate treatment under FEHA. *See Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1113 (Cal. 2000).

### C.

Section 1981 "prohibits discrimination in the 'benefits, privileges, terms and conditions' of employment." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(b)). Claims brought under section 1981 are governed by the same

legal standards as disparate treatment claims brought under Title VII. *Surrell*, 518 F.3d at 1103 (citing *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007)). Because the 7AC states a claim for disparate treatment under Title VII, it also states a claim for violation of section 1981. *See id.*; *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008); *Borja-Valdes*, 2015 WL 5522287 at *4.

## II.

It is a separate violation of Title VII for an employer to retaliate against an employee for complaining about employment practices made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Retaliation is also unlawful under FEHA. Cal. Gov't Code § 12940(h). Likewise, "[s]ection 1981 prohibits 'racial discrimination in taking retaliatory action.'" *Surrell*, 518 F.3d at 1107 (quoting *Manatt v. Bank of Am. N.A.*, 339 F.3d 792, 798 (9th Cir.2003)); *see also CBOCS W.*, 553 U.S. at 457.

### A.

Both Title VII and FEHA require a plaintiff to exhaust his administrative remedies before filing suit. *See, eg.*, *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)); *Romano v. Rockwell Internat., Inc.*, 926 P.2d 1114, 1121 (Cal. 1996) (citing Cal. Gov't Code § 12960). United contends first that this Court lacks jurisdiction over the Title VII and FEHA retaliation claims because they are unexhausted.[1]

"Although administrative exhaustion is generally a prerequisite to obtaining judicial review, [the Ninth Circuit has] recognized that forcing an employee to begin the administrative process anew after additional occurrences of discrimination in order to have them considered by the agency and the courts 'would erect a needless procedural barrier.'" *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir. 1999) (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973)), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Thus, where "the new claims are like or reasonably related to the

---

[1] As United impliedly acknowledges, in contrast to FEHA and Title VII, section 1981 has no exhaustion requirement. *Surrell*, 518 F.3d at 1103 (citing *Metoyer*, 504 F.3d at 930).

allegations contained in the EEOC [or DFEH] charge," separate exhaustion of the new claims is not required.  *Lyons*, 307 F.3d at 1104 (quoting *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)).  Applying that rule, *Anderson* excused the nonexhaustion of a retaliation claim on the ground it was "part and parcel of the other claims that had been exhausted," where there was evidence that the plaintiff's retaliatory reassignment was a direct response to her prior administrative charges: the plaintiff was told she was "reassigned because certain other agents did not want to work with someone who had filed EEO complaints."  190 F.3d at 938 (emphasis omitted).

  Here, Haney alleges that members of The Vault placed a photograph of a lynching of a black person by white supremacists, inscribed with the note, "How to move up in seniority at United Airlines," in Haney's workplace mailbox in 2013.  Haney alleges they did so in direct retaliation for Haney's decision to file EEOC charges and this civil rights lawsuit, which concern racial discrimination in promotion at United.  Because in this case, as in *Anderson*, the alleged "retaliation is a direct continuation of conduct that had been properly exhausted and specifically concerns it," 190 F.3d at 938 (emphasis omitted), Haney was not required separately to exhaust his remedies as to his FEHA and Title VII retaliation claims.

## B.

  United also contends that the 7AC fails to state a claim for retaliation under either Title VII, FEHA, or section 1981.

  Under the *McDonnell Douglas* framework, "[t]o establish a prima facie case of retaliation [in violation of Title VII], a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006); *see also McGinest*, 360 F.3d at 1124.  The same framework applies to retaliation claims brought under FEHA, *see Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005), and those brought under section 1981, *see Manatt v. Bank of Am., NA*, 339 F.3d 792, 801 (9th Cir. 2003).

As with claims for disparate treatment, however, a plaintiff need not plead a *McDonnell Douglas* prima facie case of retaliation to survive a motion to dismiss, because retaliation may also be shown by direct evidence. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004); *cf. Borja-Valdes*, 2015 WL 5522287 at *3-4; *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014) (citing *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012)). Thus, to survive a 12(b)(6) motion, a plaintiff need only "plead facts sufficient to show that [his retaliation] claim has substantive plausibility." *Johnson*, 135 S. Ct. at 347.

The 7AC pleads facts sufficient to show that Haney's retaliation claims under Title VII, FEHA, and section 1981 have substantive plausibility. Retaliation is actionable if it "produces an injury or harm," meaning the retaliatory action would tend to "'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "Threats . . . may rise to the level of an adverse employment action, if under the particular circumstance, those threats would have deterred a reasonable employee from making or supporting a charge of discrimination." *Herman v. Port of Astoria*, No. 3:15-CV-00276-HZ, 2015 WL 7720500, at *3 (D. Or. Nov. 28, 2015) (citing *Burlington*, 548 U.S. at 68). Here, Haney alleges that a threatening note and photograph of a lynching of a black person was left in his workplace mailbox in 2013 in direct response to Haney's filing this civil rights lawsuit. Haney further alleges members of The Vault were responsible for leaving the retaliatory note in his mailbox, and that Haney was intimidated and considered it a death threat. These allegations state a claim for actionable retaliation under Title VII, FEHA, and section 1981.

### III.

"[T]o make out a violation of § 1985(3), . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the

United States." *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983).  Conspiracies by private actors to deprive people of the rights identified in section 1985(3) are actionable.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267 (1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)).

United appears to make two arguments for why Haney may not pursue a section 1985(3) claim for conspiracy to violate his rights under section 1981.  First, it invokes *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979),, which held that a plaintiff may not pursue a section 1985(3) conspiracy claim based on Title VII violations.  But the reasoning of *Novotny* does not apply to section 1981, so there is nothing in *Novotny* that would support a conclusion that a plaintiff may not pursue a section 1985(3) conspiracy claim for violations of section 1981.  *See, e.g.*, *Thompson v. Int'l Ass'n of Machinists & Aerospace Workers*, 580 F. Supp. 662, 668 (D.D.C. 1984).

United's second argument is more interesting.  Although the argument is not spelled out in detail, United appears to contend that even though conspiracies by private actors are actionable under section 1985(3), the conspiracy alleged in this case is not actionable because: (i) a conspiracy under section 1985(3) must be to violate a constitutional right; (ii) very few constitutional rights protect people against conduct by other private actors; and (iii) the right to make private contracts free of racial discrimination is protected by statute (namely, section 1981), but not the constitution.  This is a plausible reading of the text of section 1985(3), and it has some support in the case law.  *See, e.g.*, *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001).  But there is case law going the other way as well.  *See Thompson*, 580 F. Supp. at 668.  Moreover, at least two Ninth Circuit cases seem to assume that a plaintiff may pursue a section 1985(3) conspiracy claim against private actors for violation of section 1981.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir.) *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000).  And it would seem strange, on the surface anyway, for Congress to have enacted a statute proscribing private discrimination in the making of contracts without intending for the


conspiracy provision that appears in the same subchapter of the United States Code to apply.[2] Because this issue has not been adequately briefed, and because the presence of the section 1981 claim would not broaden discovery in this case, the Court declines to reach the question at this time. The motion to dismiss the 1981 claim is denied, without prejudice to raising this argument again at the summary judgment stage.

**IT IS SO ORDERED.**

Dated: January 7, 2016

_____
VINCE CHHABRIA
United States District Judge

---

[2] Unless Congress intended to allow people to assert conspiracy claims directly under section 1981, which is how the courts have construed 42 U.S.C. § 1983. *See, e.g., Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).